

GERALD C. MANN
ATTORNEY GENERAL

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

Honorable Geor. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. 0-3765
Re: (1) Is the transfer of a voting
trust certificate a taxable trans-
action under Art. XV, H.B. 8, Acts
47th Leg., R.S., 1941
(2) Is the transfer of stock certif-
icates therefor to and from trustees
a taxable transaction under the above
cited Act?

Your letter of July 15, 1941, submits for our opinion the above in-
quiries and in connection therewith you attach a letter from Mr. C. E. Hastings,
Attorney of Dallas, Texas, and a copy of the particular voting trust agreement
and voting trust certificate involved. We copy from said last mentioned letter
as follows:

"You will note this Voting Trust covers certain shares of Repub-
lic National Life Insurance Company deposited with trustees named in the
agreement, granting such trustees the right to vote such stock. Against said
stock, certificates are issued providing for eighty (80) units for one (1)
share of Republic National Life stock. The Republic National Life Insurance
Company's stock has a par value of Ten Dollars ($10.00) per share so that
eighty (80) units in the Voting Trust would represent one share of stock.

"Please advise me how Article XV of House Bill No. 8 effects the
transfer of these units.

"To break down the question further -- would it not be proper to
pay the tax on the par value of the stock represented by the units in that
the units appear to be only a receipt?

"I will be glad to have you advise me further if the tax is thus
applicable to transfer of stock Voting Trust Certificates representing stock
made outside the State of Texas, although the transfers of the units are made
on the books of the trustees within the State of Texas. That is to say, are
transfers made by non-residents to non-residents subject to the transfer tax?"

Without copying herein, an haec verba, the voting trust agreement
and the voting trust certificate attached to and referred to in the above

letter, but merely referring to same as the basis of this opinion, suffice to say that the voting trust thereby constituted and the certificates issued thereunder are in accordance with the ordinary definition and acceptation of those terms. The following general definition of a "voting trust" is quoted from 13 American Jurisprudence, 539:

"A voting trust may be comprehensively defined as a trust created by an agreement between a group of the stockholders of a corporation and the trustee or by a group of identical agreements between individual stockholders and a common trustee, whereby it is provided that for a term of years, or for a period contingent upon a certain event, or until the agreement is terminated, control over the stock owned by such stockholders, either for certain purposes or for all, shall be lodged in the trustee, either with or without a reservation to the owners, or persons designated by them, of the power to direct how such control shall be used. Under such agreements title to the stock itself usually, though not always, is transferred to the depository upon trust for the purposes specified."

Analyzing the instant voting trust agreement and voting trust certificate issued thereunder, we find the four following transactions or situations, the taxability of which we must determine herein:

(1) The transfer or surrender by the subscriber to the voting trust agreement of "certificates held by them, representing shares of stock in the Republic National Life Insurance Company, to said trustees with the consent that said stock shall be cancelled and new stock issued by the Republic National Life Insurance Company to said trustees, with full power to vote said stock as the said trustees or the majority of them may deem advisable."

(2) The issuance by and delivery to said subscribers to the trust, by the designated trustees, of the described trustee certificates, "setting forth that each subscriber has transferred to said trustee one share of stock of the Republic Life Insurance Company for each eighty units of the trustees' agreement."

(3) The sale, agreement to sell, delivery or transfer of the trustees certificates or voting trust certificates, next above described, from one holder to another.

(4) The delivery or re-delivery at the termination of the trust by said voting trustees, or their successors in trust, to the owners and holders of the beneficial interest, as represented by voting trust certificates on the books of the trustees, of the shares or certificates of stock of the Republic National Life Insurance Company.

Under plain legal principles governing express trusts, generally, and under the decisions specifically involving voting trusts, we think it may be stated that under the first transaction or situation described above, only the naked legal title to the shares or certificates passed to the designated trustees under this voting trust agreement, the equitable

title and beneficial interest and ownership of such shares of certificates remaining with the subscribers to the trust agreement and the transferors of such stock.

The voting trust certificate or trustees' certificate issued and delivered under the second situation or transaction mentioned above, was merely evidentiary of the respective interests which the parties to the trust agreement had in and to the stock of the Company; that is to say, the legal title remained with the trustees but the beneficial or equitable title remained with the subscribers or their transferees, with the right to receive dividends in accordance with such interests.

The third transaction or situation, contemplating a transfer by sale, gift or otherwise of the voting trust certificates or trustees' certificates from one holder or owner to another, assignable upon the books and records of the trustees, results in a transfer of the equitable title or beneficial rights and ownership of such shares or certificates of the Republic National Life Insurance Company, represented by such trustees' certificates; but not transfer of the legal title to such shares occurs thereby, because same remains with the voting trustees.

The fourth transaction or situation is the converse of the first, and effects the transfer of the legal title to the shares or certificates of the Republic National Life Insurance Company back into the holders of the beneficial interest, or their assignees or transferees, thereby vesting in them both the legal and the equitable title.

Under this analysis of the possible taxable transactions under the cited Stock Transfer Act, arising from the voting trust agreement before us, we conclude that the first, third and fourth of such transactions or transfers are subject to the excise stamp tax levied thereby, but the second transaction is not taxable thereunder.

This conclusion is grounded upon the express language of Section 1 of the Stock Transfer Act, which appears designed to reach just such a situation as this. We quote, underlining the pertinent portions:

"There is hereby imposed and levied a tax as hereinafter provided on all sales, agreements to sell, or memoranda of sales, and all deliveries or transfers of shares, or certificates of stock, or certificates for rights to stock, or <u>certificates of deposit representing an interest in or representing certificates made taxable under this Section</u> in any domestic or foreign association, Company, or corporation, or certificates of interest in any business conducted by trustee or trustees made after the effective date hereof, whether made upon or shown by the books of the association, company, corporation, or trustee, or by any assignment in blank or by any delivery of any papers or agreement or memorandum or other evidence of sale or transfer or order for or agreement to buy, <u>whether intermediate or final, and whether investing the holder with the beneficial interest in or legal title to such stock or other certificate taxable hereunder, or with the possession or use thereof for any</u>

purpose, or to secure the future payment of money or the future transfer of any such stock, or certificate, on each hundred dollars of face value or fraction thereof, three (3) cents . . ." (Underlining ours)

That it was the legislative intent to tax transfers of shares or certificates of stock to and by trustees, including trustees of an express voting trust, is further indicated by the fact that in creating certain exceptions or exemptions from the above quoted tax levy, an exception was conferred upon "transfers of certificates from a fiduciary or from one nominee of such fiduciary to another, provided the same continue to be held by such nominee for the same purpose for which they would be held if retained by such fiduciary." In connection with this express exception involving fiduciaries or trustees, it is significant to note that no exemption is created with reference to transfers of stock or stock certificates to or by such trustees or fiduciaries, but such exemption covers only transfers to their nominees.

We therefore submit that a taxable transaction or eventuality is created under the Stock Transfer Act by either a "sale, agreement to sell, delivery or transfer upon the books and records, of shares or certificates of stock, or certificates for rights to stock, or certificates of deposit representing an interest in stock, whether vesting in the transferee merely the legal title, or merely the equitable title or beneficial interest, or, as in the usual instance, both the legal and equitable right, title and interest.

Supporting our construction of the text of the statute, we find the persuasive authorities of the courts of last resort of the State of New York construing the Stock Transfer Act of that State (from which we understand the Texas Act to be adopted) and certain decisions of the intermediate Federal courts, involving an Act of Congress substantilaly similar in this regard. It has been stated that a "phrase, provision or statute adopted from the laws of another state or country will ordinarily be given the same construction in Texas that it had received in the jurisdiction from which it was borrowed. If it had been given a fixed and definite meaning by the courts of that jurisdiction, it would be given the same meaning in Texas. This rule rests upon the presumption that the Legislature was aware of the judicial interpretation given in the jurisdiction from which the statute was taken, and that in adopting such statute, it intended also to accept such construction." 39 Tex. Jur. 264-265.

Therefore, we hold that the first transaction mentioned above is taxable under the Act, because it involved a transfer of the legal title to shares or certificates of stock of the Republic National Life Insurance Company to the trustees named in the voting trust agreement, even though the equitable title or beneficial interest remained with the subscribers or transferors. William F. Bonbright & Co. v. State, 151 N.Y. Sup. 38; Cliffs Corp. v. United States, 103 Fed. (2d) 77.

Upon the same basis of reasoning, we hold that the fourth transaction described above involves a taxable transfer, being merely the converse of the first situation. Chicago Great Western Ry. Co. v. State, 189 N. Y. S. 457, affirmed, 135 N. E. 960.

This interpretation, upon substantially identical statutes, appears from the administrative ruling and regulations of the U. S. Treasury Department and of the states of Massachusetts and New York, holding the transfer of shares or certificates of stock to and from voting trustees to be taxable. See, infra.

We hold the third transaction named above to involve a taxable transfer, even though the legal title to the stock does not pass by the transfer of the voting trust certificate but remains with the trustees. The statute clearly intends to make taxable the transfer of the mere beneficial interest or equitable title to stock, evidenced by a voting trust certificate. This construction is supported by certain decisions and by the rules and regulations of the taxing authorities above mentioned, holding the transfer of voting trust certificates to be taxable. United States v. Baker, 115 Fed. (2d) 129; Art. 15 (7), (14) of Information Relating to the Stock Transfer Tax Law. (New York); Regulations 71 U. S. Treas. Dept., Art. 34(b) and (c).

Because such voting trust certificates are designed to merely evidence the beneficial or equitable interests of the holders of such certificates in the actual shares of certificates of stock of the Republic National Life Insurance Company, the tax accruing upon the transfer thereof will be computed on the basis of the par value of such stock, to the extent that same is represented by the units covered by said voting trust certificates.

The fourth transaction involved in the instant facts, that is, the issuance and delivery of the voting turstees of voting trust certificates, is not a taxable transfer because same is tantamount to an original issue of stock, which has been held not to be subject to this tax measure, by our Opinion No. O-3594, directed to you. By the issuance of such certificates by the voting trustees, no transfer of the legal or equitable title to shares or certificates of stock or interests therein occurs, but such certificates are merely evidentiary of the rights created by the voting trust agreement.

Answering your last question, you are advised that the three transactions or transfers held to be taxable herein, will be governed by the principles announced in our opinion No. O-3713 directed to you. Transfers by non-residents to non-residents of stock certificates or voting trust certificates will be taxable if any one of the four taxable transactions or events named in the statutes and in said opinion occurs or transpires in the State of Texas. More specifically, if the transfers of the units represented by the voting trust certificates issued in the instant case are recorded upon the books and records records required to be kept by the voting trustees within the State of Texas, under the express terms of the voting trust agreement, or if the transfer of the shares or certificates of stock of the Republic National Life Insurance Company by or to said voting trustees, is made upon the transfer books and records of said company in Texas, then, under our opinion No. O-3713, a stock transfer tax accures, even though the agreement or contract involving

the sale or transfer of such shares or voting trust certificates, the actual sale or transfer of such shares or certificates, and their delivery, each and all transpired intrastate.

Trusting the foregoing satisfactorily answers your inquiries, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Pat M. Neff, Jr.

Pat M. Neff, Jr.
Assistant

APPROVED SEP 4, 1941
/s/ Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

PMN:lh:egw

APPROVED
Opinion Committee
By B W B
Chairman